UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
**F I L E D**

JAN 1 1 2006

AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 04-585-GWU

ARVEL SMITH,                                                       PLAINTIFF,

VS:                                  MEMORANDUM OPINION

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                   DEFENDANT,

INTRODUCTION

Arvel Smith originally brought Smith v. Apfel, Pikeville  Civ. A. No. 99-324
(E.D. Ky) to obtain judicial review of an unfavorable administrative decision on
his applications for Disability Insurance Benefits (DIB) and for Supplemental
Security Income (SSI).  After a period of administrative reconsideration prompted
by the Court's Memorandum Opinion, Order, and Judgment of October 20, 2000
(Tr. 455-462), it was again before the Court on October 4, 2002 as London Civ.
No. 02-54 at which time the plaintiff agreed to a consent remand at the request
of the defendant. The case is  once more before the undersigned upon cross-
motions for summary judgment.

APPLICABLE LAW

The Sixth Circuit Court of Appeals has established the following test for
judicial analysis of benefit denial cases:

1.      Is the claimant currently engaged in substantial gainful activity? If
yes, the claimant is not disabled.  If no, proceed to Step 2.  See 20 C.F.R.
404.1520(b), 416.920(b).

2.      Does the claimant have any medically determinable physical or
mental impairment(s)?  If yes, proceed to Step 3. If no, the claimant is not

1

disabled. See 20 C.F.R. 404.1508, 416.908.

3.      Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 416.921.

4.      Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).
5.      Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix I (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.      Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform his kind of past relevant work? If yes, the claimant is not disabled. If no, proceed to step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7.      Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(l).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1985).

In applying this analysis, it must be remembered that the principles applicable to judicial review of administrative agency action apply. Judicial review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence and in deciding whether the Commissioner employed the proper criteria in reaching his conclusion; the findings as to any fact, if supported by substantial evidence, shall be conclusive. Id. This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion"; it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Id.

2

One of the factors in the administrative record may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).

Additional information regarding the specific steps of the seven-part Garner test cited earlier is also valuable.

In step three of the analysis, the issue is whether the plaintiff has a "severe impairment," defined by the regulations to mean one which significantly limits one's ability to perform basic work activities, which is in turn defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. 404.1521, 416.921. The Sixth Circuit has definitely cautioned against overly-restrictive interpretation of this term. Farris v. Secretary of Health and Human Services, 773 F.2d 85 (6th Cir. 1985). The burden is upon the plaintiff, however, to provide evidence complete and detailed enough to enable the Commissioner to determine that there is such a "severe impairment," Landsaw v. Secretary of Health and Human Services, 803 F.2d 211 (6th Cir. 1986).

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that she or he is unable to return to this work. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048,

3

1053 (6th Cir. 1983).

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways that the Commissioner may meet his burden is through the use of the medical-vocational guidelines.

However, the medical vocational guidelines themselves may not even be fully applicable if a non-exertional impairment is involved. When this happens, the Commissioner may use the rules as a framework for decision-making. 20 C.F.R. Part 404, Subpart P, Appendix 2, Rules 200.00(e). It may often be required for the agency to consult a vocational specialist in such cases. Damron v. Secretary, 778 F.2d 279 (6th Cir. 1985). Nonetheless, the finding by the Commissioner that a non-exertional impairment does not significantly affect the level of work that a claimant can do must be tantamount to a finding that this additional impairment is non-severe. Wages v. Secretary of Health and Human Services, 755 F.2d 495 (6th Cir. 1985).

One of the residual functional levels used in the guidelines, called "medium" level work, involves lifting no more than fifty pounds at a time with frequent lifting or carrying of objections weighing up to twenty-five pounds; a person capable of this level of exertion is also deemed capable of performing at lesser levels of "light" and "sedentary." 20 C.F.R. 404.1567(c), 416.967(c). "Light" level work, involves the lifting of no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is in this category when it involves a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or

4

leg controls; by definition, a person capable of this level of work activity, must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b), 416.967(b). A "sedentary" level job encompasses the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a). The guidelines make it clear that disabilities such as postural restrictions or the lack of bilateral manual dexterity compromise a person's ability to do a full range of this type of work; they also indicate that a finding of disabled is not precluded when the person is not able to do a full range of sedentary work, even if that person is a "younger individual." 20 C.F.R. Part 404, Subpart P, Appendix 2, Rules 200.00(e), 201.00(h).

Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question, but only "if the question accurately portrays (plaintiff's) individual physical and mental impairments." Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The Administrative Law Judge (ALJ) concluded that Smith, a 42 year-old former coal mine drill operator with a high school education, suffered from impairments related to decreased visual acuity, obesity and the residuals of a motor vehicle accident consisting of degenerative joint disease affecting the forearms and femur. (Tr. 859). While the plaintiff was found to be unable to return to his past relevant work, the ALJ determined that he retained the residual functional capacity to perform a restricted range of medium level work. (Tr. 859). Since the available work was found to constitute a significant number of jobs in the national economy, the claimant could not be considered totally disabled. (Tr.

5

859-860). The ALJ based this decision, in large part, upon the testimony of a vocational expert. (Tr. 858).

The Court must first determine the time frame pertinent to this appeal. Smith filed his current applications for DIB and SSI on June 14, 1996, alleging a disability onset date of May 15, 1993.[1]  (Tr. 267, 383). The plaintiff had previously filed applications for DIB and SSI in October of 1993. (Tr. 68, 94). These applications were denied at all administrative levels in an administrative decision which became final as of July 26, 1995. (Tr. 237-250). This denial decision was not reopened by the current ALJ. (Tr. 854). In the August, 2003 administrative denial decision which is now before the undersigned, the ALJ determined that the claimant's DIB-insured status had expired on December 31, 1994. (Tr. 858). Because the time-frame relating to Smith's DIB-claim has been fully adjudicated on the prior application, he cannot qualify for DIB. This earlier denial decision does not affect the plaintiff's SSI claim and its relevant time period runs from the June 14, 1996 filing date through the August 7, 2003 date of the current denial decision.

After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence. Therefore, the Court must grant the defendant's summary judgment motion and deny that of the plaintiff.

The hypothetical question presented to Vocational Expert Maureen Sinclair included an exertional limitation to medium level work restricted from a full range by such limitations as (1) an inability to lift more than 40 pounds; (2)

---

[1]While these claims were pending before the Court, the plaintiff filed another application for SSI on March 31, 2000. (Tr. 511-514). This application was consolidated with the earlier applications in the decision that is now before the undersigned. (Tr. 854).

6

blindness in the right eye; and (3) 20/70 vision in the left eye. (Tr. 911). In response, the witness identified a significant number of jobs in the national economy which could still be performed. (Tr. 911-912). Therefore, assuming that the vocational factors considered by Sinclair, fairly depicted Smith's condition, then a finding of disabled status, within the meaning of the Social Security Act, is precluded.

Smith was found capable of performing a restricted range of medium level work in the earlier denial decision which became final on August, 1995 and these restrictions included somewhat more severe postural and environmental limitations than were included in the current denial decision. (Tr. 249). Principles of res judicata require that the administration be bound by this decision unless a change of circumstances is proved upon a subsequent application. Drummond v. Commissioner of Social Security, 126 F.3d 837, 842 (6th Cir. 1997). Acquiescence Ruling 98-3(6) instructs that the agency "must adopt [the residual functional capacity finding] from a final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding..." In the present action, the ALJ did conclude that medical improvement had occurred justifying the current residual functional capacity finding. (Tr. 857).

The hypothetical question fairly characterized Smith's condition, as required by Varley. In the time period since this action was previously before the undersigned, Dr. Jacob Agamasu examined the plaintiff and opined that his ability to perform such activities as lifting, sitting, standing, moving about, carrying, handling objects, hearing, speaking, or traveling was unimpaired. (Tr. 653). The claimant's right eye blindness would impair certain activities. (Tr.

7

653). His visual acuity was noted to be 20/70 on the left. (Tr. 652). The hypothetical question was consistent with this opinion. Dr. Richard Gardner, an orthopedic specialist, testified at the March, 2003 hearing as a medical advisor and the only specific restriction indicated by the physician was an inability to lift more than 40 pounds. (Tr. 890-891). This limitation was presented in the hypothetical question. The hypothetical question's vision limitations were essentially compatible with the findings of Dr. R.S. Kukreja, an examining ophthalmologist.[2] (Tr. 363-364). The doctor did state that the plaintiff should not drive and that doing work would be difficult. However, Dr. Kukreja did not preclude all employment and Sections of 381.687-014, 381.687-018 and 382.664-010 of the Dictionary of Occupational Titles do not indicate that driving is a requirement of the janitorial work noted by the vocational expert. Finally, the ALJ's question appears consistent with the opinion of Dr. Horace Addams (Tr. 354-362) and Dr. Logan Mahaffey (Tr. 367-377), non-examining medical reviewers. These reports provide substantial evidence to support the administrative decision.

Smith argues that the ALJ erred in rejecting the restrictions of Dr. Kenneth Slone, his treating physician. Dr. Slone identified the existence of more severe functional limitations than those found by the ALJ on several occasions during the relevant time period including August 4, 1997 (Tr. 428, 557-560), September 24, 1997 (Tr. 378-381), and October 5, 1998 (Tr. 410-412, 544-546). The ALJ

---

[2]Dr. Kukreja did indicate that the claimant's near vision was 20/100, a somewhat more severe limitation than that presented in the hypothetical question. However, Dr. Agamasu indicated a 20/70 visual acuity without specifying near or distant vision. (Tr. 652). Furthermore, Vocational Experts Ralph Crystal (Tr. 59-60) and Carol Tarvin (Tr. 488-489) each testified at earlier administrative hearings and identified significant numbers of jobs at the light level which could still be performed which would not require acute near vision. Therefore, any error would be harmless in omitting this factor.

indicated that he rejected these opinions because they conflicted with the opinion of Dr. Gardner, who as an orthopedic specialist was more qualified to comment on the plaintiff's back problems than Dr. Slone who was an osteopath. (Tr. 856). The Administrative regulations provide that "we generally give more weight to the opinion of a specialist about medical issues related to his or her area of speciality than to the opinion of a source who is not a specialist." 20 C.F.R. Section 404.1527(d)(5). Dr. Gardner reviewed the record and opined that the claimant's fractures had healed and that the treatment notes made it appear that he was reasonably healthy. (Tr. 889). The physician noted no neurological abnormalities had been reported in the back. (Tr. 889). Dr. Slone himself noted the claimant to be neurologically intact on numerous occasions. (Tr. 349, 405, 427, 429, 431, 554, 562, 692, 700, 704). Dr. Agamasu found no motor deficit or muscle atrophy upon physical examination. (Tr. 653). Dr. Robert Strickmeyer, another examining consultant, found no neurological abnormalities. (Tr. 346). Dr. Mukat Sharma, yet another examiner, also found that Smith was neurologically intact. (Tr. 845). Under these circumstances, the ALJ could properly reject the opinion of Dr. Slone.

Smith asserts that the ALJ erred by not specifically addressing Dr. Slone's disability opinions of June 23, 1994 (Tr. 221), April 3, 1995 (Tr. 312), May 3, 1995 (Tr. 229), August 7, 1995 (Tr. 317), or August 4, 1997 (Tr. 428, 557-560). With the exception of the August 4, 1997 opinion, all of these disability findings were issued before the relevant time period. As noted by the plaintiff, the ALJ did specifically address the disability opinions issued by the doctor on September 24, 1997 and October 5, 1998. (Tr. 856). These findings were essentially the same as those issued by Dr. Slone on August 4, 1997 and the same reasons for rejecting these opinions apply to that of August 4, 1997. Therefore, any error

9

would appear harmless.

Smith asserts that the ALJ erred in failing to find that his vision problems met the requirements of Section 2.02 of the Listing of Impairments. This Listing requires a claimant to demonstrate blindness in one eye and that the best corrected vision be no more than 20/200. Dr. Syamala Reddy, an examiner who saw the claimant in March of 2003, reported that the plaintiff's left eye's best corrected vision was only 20/200. (Tr. 876). However, Dr. Reddy also indicated that the visual field evaluation had been "limited due to the poor response from the individual." (Tr. 876). The ALJ interpreted this statement as a finding that the claimant had failed to put forth his best effort during this examination and rejected the findings. (Tr. 856). The doctor indicated that based on this examination, he could not explain the height of the patient's vision loss. (Tr. 877). Therefore, the Court agrees with the ALJ's conclusion that the plaintiff failed to put forth his best effort and that this 20/200 measurement was not valid.

Finally, Smith asserts that the ALJ erred in rejecting his claim of suffering from blurred vision in his left eye 20 to 30 percent of the time as a result of "floaters" in the eye. Dr. Reddy did report the existence of vitriol floaters in the left eye during his March, 2003 examination and also reported lattice degenerative changes in the eye. (Tr. 876). However, the doctor did not indicate that these problems would impose the degree of restriction alleged by the claimant and specifically noted he could not explain the loss of vision. (Tr. 876-877). The plaintiff's response to the visual field examination was questioned by the examiner, reducing his credibility. Therefore, under these circumstances, the Court must reject Smith's argument.

The undersigned concludes that the administrative decision should be affirmed. Therefore, the Court must grant the defendant's summary judgment

10

motion and deny that of the plaintiff. A separate judgment and order will be
entered simultaneously consistent with this opinion.

This the ___//___day of January, 2006.

G. WIX UNTHANK
SENIOR JUDGE

11